UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DURWYN TALLEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20-1455 |
| | ) | |
| UNIVERSITY OF ILLINIOS | ) | |
| at CHICAGO, et. al., | ) | |
| Defendants | ) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

Plaintiff, a *pro se* prisoner, filed a complaint pursuant to 42 U.S.C. §1983 in the Northern District of Illinois on November 20, 2020. [1].  Since all of Plaintiff's claims pertained to his incarceration at Pontiac Correctional Center, the Northern District transferred Plaintiff's case to the Central District of Illinois for proper venue. *See* December 28, 2020 Order, [7, 8].

The Court noted Plaintiff had not paid the filing fee, nor had he filed a motion for leave to proceed *in forma paupers* (IFP).  Therefore, Plaintiff was given 21 days to either pay the fee or file a motion. *See* December 29, 2020 Text Order.

On January 4, 2021, Plaintiff responded with an IFP motion, a motion for appointment of counsel, and a motion for leave to file an amended complaint. [11, 13, 14].  On January 5, 2020, Plaintiff filed a motion for a temporary restraining order and preliminary injunction. [15].  Before considering Plaintiff's request for emergency injunctive relief, the Court must first identify Plaintiff's surviving claims.

1

## I. MERIT REVIEW

Plaintiff's motion for leave to file an amended complaint is granted pursuant to Federal Rule of Civil Procedure 15. [14]. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.  In addition, since the amended complaint supersedes the original complaint [1], the Court will only consider claims alleged in the amended complaint. [14].

The Court also notes Plaintiff has not paid the filing fee, but instead is asking for leave to proceed IFP. [11].  However, Plaintiff has accumulated three strikes pursuant to 28 U.S.C. §1915(g).[1] *See Talley v. Jennings*, Case No. 19-1204, July 23, 2019 Merit Review Order, p. 1.  Therefore, Plaintiff may only proceed IFP for claims clearly alleging he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

The imminent danger exception is construed narrowly as "an escape hatch for genuine emergencies," where "time is pressing" and "a threat ...is real and proximate." *Heimermann v Litxcher*, 337 F3d 781 (7th Cir. 2003) *citing Lewis v.Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). "Allegations of past harm do not suffice; the harm must be imminent

---

[1] Plaintiff has filed a total of 16 cases in the Central District of Illinois and 33 cases in all District Courts within the Seventh Circuit.  The Seventh Circuit Court of Appeals has issued an order directing clerks to return unfiled any papers submitted by the Plaintiff unless he pays all outstanding fees.  The order does not apply to any suit in which the Plaintiff alleges imminent danger of serious physical injury as determined by the District Court. *See Talley v. Jennings*, Case No. 19-1204, [42](July 28, 2020 Amended Order).

or occurring at the time the complaint is filed." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). In addition, the danger must involve "serious physical injury." 28 U.S.C. § 1915(g).

A court should deny a 3-strike plaintiff leave to proceed IFP "when prisoner's claims of imminent danger are conclusory or ridiculous." *Ciarpagini*, 352 F3d at 330. Furthermore, even if a plaintiff adequately pleads imminent danger as to one claim, he may not "piggyback" other claims which do not establish imminent danger of a serious physical injury. *See Bennett v Moore*, 2009 WL 1871856 at 2 (S.D. Ill. June 26, 2009); *see also Godwin v. Tidquist*, 2010 WL 4941616 (W.D.Wis. November 30, 2010)(plaintiff only allowed to proceed with claim which meets imminent danger exception); *Peterson v. Thatcher*, 2009 WL 2341978 at 3 (N.D.Ind.,July 27, 2009) (§ 1915(g) mandates the court deny the plaintiff leave to proceed *in forma pauperis* on those claims for which he is not in imminent danger).

Plaintiff's amended complaint identifies ten specific Defendants including University of Illinois at Chicago (UIC) gastrointestinal specialist Timothy McGorsie; Pontiac Correctional Center Warden Leonta Jackson, former Warden Terri Kennedy, Medical Director Dr. Andrew Tilden, Warden of Operations Officer Cox and former Warden of Operations Glendall French; and Illinois Department of Corrections (IDOC) Medical Director John Doe, Director Rob Jefferies, former Director John Baldwin, and "head of investigations" Joseph Jennings. (Amd. Comp., p. 2). The docket also lists University of Illinois at Chicago and "Scanning Pontiac" as Defendants, but both will be dismissed since they are no longer identified in the amended complaint.

3

Plaintiff has suffered with gastroesophageal reflux disease or GERD for approximately ten years.  GERD "occurs when stomach acid frequently flows back into the tube connecting your mouth and stomach (esophagus). This backwash (acid reflux) can irritate the lining of your esophagus."[2]

Plaintiff transferred to Pontiac Correctional Center on March 7, 2019.  At the time, Plaintiff had a referral pending in his medical file for a gastrointestinal (GI) specialist.  Plaintiff discussed the referral with Defendant Dr. Tilden when they met later in March of 2019.  Plaintiff also informed the doctor he needed pain medication for his condition.  However, Plaintiff also admitted he had been on all "three classes of medication" for his condition and the medications no longer had any impact. (Amd. Comp., p. 4).  Defendant Dr. Tilden said he would not prescribe any additional pain medication, but he would follow-up with the specialist referral.

Plaintiff says he complained in person and with grievances to Defendant Warden Kennedy and Major French that he had not yet seen a specialist. Neither took any action.

In July or August of 2019, Defendant French told Plaintiff "he needed to stop writing grievances and filing complaints. And that if plaintiff made things right with Joseph Jennings, that his medical problems might go away." (Amd. Comp., p. 4). Plaintiff then includes a confused history of litigation he apparently filed in Brown

---

[2] GASTROESOPHAGEAL REFLUX DISEASE (GERD): Gastroesophageal reflux disease (GERD) - Symptoms and causes - Mayo Clinic, (last visited January 6, 2021).

4

County against Officer Jennings and other, unspecified staff members. (Amd. Comp., p. 4-5).

It is difficult to decipher this section of Plaintiff's complaint, but it does not appear the cases are still pending. (Amd. Comp., p. 5-6).  In addition, it is not clear what connection lawsuits in Brown County, Illinois have with Plaintiff's claims against Pontiac Correctional Center Defendants in Livingston County, Illinois.

Plaintiff says he finally saw a GI specialist on September 30, 2019 when he met with Defendant UIC Dr. Timothy McGorsie.  Plaintiff claims the doctor told him he could perform an endoscopy to determine the extent of any damage to Plaintiff's esophagus and stomach, but the procedure had risks.  Plaintiff asked if he could proceed with a barium swallow test first and the Defendant agreed.  Plaintiff says he remained in pain while waiting for the test which was not scheduled until January or February of 2020.

The doctor who later performed the barium swallow test told Plaintiff his throat was abnormally swollen, and she was going to recommend endoscopy.

Plaintiff says from March of 2020 to July of 2020 he made numerous complaints to Defendants Warden Jackson, Warden Cox, Major French, and Dr. Tilden about the need to see a specialist and the need for pain medication.  Plaintiff does not clarify how he made the complaints or what, if any, responses he received.

Plaintiff against mentions a lawsuit he attempted to file in Sangamon County at this time complaining about the medical care.  It is difficult to decipher what Plaintiff is

alleging, but it appears the case was dismissed prior to service of any Defendant. (Amd. Comp., p. 6).

Plaintiff was transferred to UIC for an endoscopy on July 20, 2020.  Plaintiff claims Defendant Dr. McGorsie "cut out a piece of plaintiff's stomach and permanently ruined his throat and esophagus mobility." (Amd. Comp., p. 7).  Defendant Dr. McGorsie told Plaintiff he had removed a small polyp from Plaintiff's stomach and further claimed Plaintiff's esophagus and throat were fine.  Plaintiff says the doctor repeatedly lied about his condition and he continued to suffer in pain and had reduced mobility in his esophagus.

Plaintiff returned to see Defendant Dr. McGorsie one week later.  The doctor stated he knew Plaintiff had previously tried to file a lawsuit against him and "plaintiff was wrong for making allegations against him right now." (Amd. Comp., p. 7).

The Defendant doctor confirmed Plaintiff had a reduction of mobility in his throat and esophagus when he swallowed.  The doctor agreed the condition could be the result of Plaintiff's long-term problems with GERD.  Defendant Dr. McGorsie also noted he could not tell whether Plaintiff had a problem with his esophageal sphincter, the muscle that separates the esophagus from the stomach, or whether Plaintiff had a hernia.

Defendant Dr. Gorsie said he could redo the endoscopy, but instead would insert the camera through Plaintiff's nostrils.  This way, Plaintiff would be awake during the procedure which would aid in the diagnosis.  Plaintiff believed the procedure sounded painful. (Amd. Comp., p. 9).

While not entirely clear, it appears Defendant Dr. Gorsie did not recommend surgery.  Plaintiff then asked if he could get a second opinion.  The Defendant doctor agreed and said he would ask for Plaintiff to be rescheduled with another provider within a couple of weeks.  Plaintiff says he was never rescheduled and apparently did not see another provider.  While Plaintiff blames Defendant Dr. Gorsie, IDOC would need to approve any outside consultation or examination.

Plaintiff says since he had the endoscopy, he is no longer able to swallow correctly and has only 15 to 20 percent movement of his esophagus.  In addition, Plaintiff claims the untreated GERD has impacted his breathing. Plaintiff claims all of the Defendants knew he needed additional medical attention, but they took no action.

While it is difficult to interpret portions of Plaintiff's complaint, he has alleged Defendants Dr. Tilden and Dr. Gorsie were deliberately indifferent to his serious medical condition when they either delayed or denied needed medical care for GERD. Plaintiff alleges he is in imminent danger since he continues to suffer in pain, he has limited ability to swallow, and he has been denied any further medical care.

While Plaintiff says he is suing the Defendants in their official and individual capacities, the claim is articulated against the two doctors in their individual capacities only. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Plaintiff has also alleged Defendants Kenney and French knew Plaintiff had a medical order for a referral to an outside GI specialist in April of 2019, but they took no action to expedite that order.  Since Plaintiff was referred to a GI specialist in September

7

of 2019, Plaintiff has not alleged he is in imminent danger of serious physical injury due to the actions of these Defendants, nor could these Defendants approve medical care.

The same is true for Plaintiff's claims that he complained to Defendants Warden Jackson, Warden Cox, and Major French about the need to see a specialist prior to his appointment in July of 2020.  In both instances, Plaintiff was ultimately referred to an outside doctor and he received additional medical care.

Plaintiff has also failed to clearly state a claim against the remaining, non-medical Defendants.  Plaintiff either makes no mention of the Defendants in the body of his complaint or fails to explain how they specifically knew about his medical needs, or knew he was not receiving needed medical care.

Plaintiff's complaint does not specifically allege the Defendants retaliated against him.  However, if this was an intended claim, Plaintiff's vague allegations concerning other, unrelated lawsuits involving different individuals and a different county is not sufficient.

Plaintiff also alleges his mail to family and unspecified attorneys is intercepted and he is not allowed the same phone calls as other segregation inmates.  (Amd. Comp., p. 9, 10).  However, Plaintiff has not stated how this is related to his claims concerning medical care, nor who was responsible.  In addition, Plaintiff has not alleged he is in imminent danger of serious physical injury as a result.

Finally, the Court notes Plaintiff says Defendants have violated his "state and federal rights." (Amd. Comp., p. 11).  Plaintiff has not identified any state law claims in his complaint.

8

Based on the Court's review of Plaintiff's complaint, he may proceed with his Eighth Amendment claim of deliberate indifference to a serious medical condition against Defendants Dr. McGorsie and Dr. Tilden.

## II.  MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff has filed a motion asking for emergency injunctive relief. [15]. A temporary restraining order (TRO) can be issued without notice to the party to be enjoined, but it may last no more than fourteen days.  Fed. R. Civ. P. 65(b)(2).  A court may only grant the motion if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). This relief is warranted "to prevent a substantial risk of injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). A TRO is an "emergency remedy" designed to "maintain the status quo until a hearing can be held on an application for a preliminary injunction." *Crue v. Aiken,* 137 F.Supp.2d 1076, 1082 (C.D.Ill. April 6, 2001).

On the other hand, a preliminary injunction can be issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* Fed. R. Civ. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)

(citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In addition, in the context of prisoner litigation, the Prisoner Litigation Reform Act (PLRA) places further restrictions on courts' remedial power. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012); *Johnson v. Lashbrook*, 2017 WL 958509, at *1–2 (S.D.Ill. March 13, 2017). Pursuant to the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

Plaintiff's motion includes information concerning treatment for GERD which is not alleged in his complaint. Nonetheless, Plaintiff says he suffers from the continued failure to provide treatment for his GERD.[3] Plaintiff has not received pain medication,

---

[3] Plaintiff also refers to a failure to provide medical care for his eye, teeth, and mental health. These issues are not before the Court in this lawsuit.

he has not been referred for a second opinion, and he has not received other treatment. Plaintiff suffers in pain and his condition has deteriorated.

The Court will order expedited service on the Defendants, and once served, will require Defendants to file a response to Plaintiff's motion with an affidavit from a medical provider.

If appropriate, Defendants may also choose to contest Plaintiff's claim of imminent danger pursuant to §1915(g).  While the Court must accept an unchallenged assertion, "when a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict." *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010)(court may determine credibility of imminent danger claim by relying on affidavits or depositions, or if necessary, holding a hearing).

### III.  MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also filed a motion requesting the appointment of counsel. [13]. Plaintiff has no constitutional right to the appointment of counsel and the Court cannot require an attorney to accept pro bono appointment in a civil case.  Instead, the most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

In considering Plaintiff's motion, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively

precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

Plaintiff has provided a list of attorneys contacted and says he cannot afford to hire an attorney.  Nonetheless, Plaintiff has extensive litigation experience having filed a total of 33 cases.  Plaintiff will be able to obtain medical records during discovery and should also be able to testify personally to the pain he experienced, his attempts to obtain help, and the responses he received, which can be used to show evidence of deliberate indifference. *See Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997)(expert testimony not necessarily required to establish deliberate indifference).  Finally, the Court will enter a scheduling order in this case after Defendants file their answer which provides information to assist a *pro se* litigant, and requires the exchange of initial, relevant discovery.  Therefore, Plaintiff's motion is denied. [13].

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges Defendants Dr. McGorsie and Dr. Tilden violated Plaintiff's Eighth Amendment rights when they were deliberately indifferent to his serious medical condition.  Plaintiff alleges the Defendants delayed or denied treatment for GERD.  The claim is stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt expedited service on Defendants.  With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address.  This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

4) **Defendants will have 21 days from service to file a response to Plaintiff's motion for emergency injunctive relief. If appropriate, Defendants may also contest Plaintiff's claim of imminent danger pursuant to §1915(g) with 21 days of service.**

5) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.   The  notice  of  electronic  filing  shall  constitute  service  on

13

Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

6) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

7) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

8) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel**.**

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Grant Plaintiff's motion for leave to amend his complaint, [14]; 2) Dismiss all Defendants except Dr. McGorsie and Dr. Tilden for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 3) Deny Plaintiff's motion for appointment of counsel, [13]; 3) Attempt expedited service on the Defendants; 4) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 5) enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act**

ENTERED this 7th day of January, 2021.


s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE